ENDORSED

First Judicial District Court

AUG 1 2 2020

Santa Fe, Rio Arriba &
Los Alamos Counties
PO Box 2268
Santa Fe, NM 87504-2268

Peter Strojnik,
7847 N. Central Avenue
Phoenix, Arizona 85020
Telephone: (602) 524-6602
ps@strojnik.com

**IN THE STATE OF NEW MEXICO**
**1ST JUDICIAL DISTRICT SANTA FE COUNTY**

Case No: D101CV2020001751

Matthew J. Wilson

**COMPLAINT**

PETER STROJNIK,

Plaintiff,

vs.

ASHFORD POSADA, L.P. DBA LA
POSADA DE SANTA FE, A TRIBUTE
PORTFOLIO RESORT & SPA

Defendant.

1. Plaintiff brings this action pursuant to the (1) Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* and corresponding regulations, 28 CFR Part 36 and Department of Justice Standards for Accessible Design ("ADAAG"), (2) New Mexico's Unfair Trade Practices Act and Brand Deceit, and (3) common law of negligence and/or negligence per se.

**PARTIES**

2. Plaintiff Peter Strojnik is an immigrant, a disabled veteran and a senior citizen.

3. At all times relevant hereto, Plaintiff suffered from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure.

4. Plaintiff's physical infirmities alleged above do both of the following:

**Exhibit C**

1    a.  Affect neurological, musculoskeletal, respiratory, cardiovascular, reproductive
2        and genitourinary body systems; and
3    b.  Limit, without regard to mitigated or unmitigated measures, active or inactive
4        state, remissive or non-remissive condition, the following major life activities:
5        walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking,
6        jumping, twisting body, running, reaching, lifting, writing, working, twisting the
7        wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting
8        in and out of a car, working, carrying stuff and other major life activities.
9  5.  Plaintiff has a history of impairments stated in the preceding paragraph.
10 6.  Plaintiff is regarded as having a physical conditions that limit major life activities.
11 7.  Because of Plaintiff's disabilities, he requires the use of facilities that are accessible
12     to him and have the standard accessibility features of the construction related
13     accessibility standards including those required by 42 U.S.C. Sec. 12101 et seq., 28
14     C.F.R. Part 36 and the 2010 Standards for Accessibility
15     Design as these laws, standards and regulations relate to
16     Plaintiff walking, standing, sitting, bending, sleeping,
17     working, climbing stairs, kicking, jumping, twisting
18     body, running, reaching, lifting, writing, working,
19     twisting the wrist, shoulder and elbows, grasping,
20     pushing, opening doors, breathing, getting in and out of
21     a car, carrying stuff and working.
22 8.  Plaintiff has been declared disabled and has been issued
23     a government disability placard reproduced in the
24     margin.
25 9.  The effect of Plaintiff's impairments on major life activities and, consequently, on the
26     personal encounters with accessibility barriers at Defendant's Hotel, must be
27     considered in their mitigated, unmitigated, active, inactive, remissive or non-
28     remissive states. 2008 ADAAA and 28 C.F.R. 36.105.



2

10. Defendant owns, operates, leases, or leases to a lodging business located at 330 E. Palace Ave., Santa Fe, NM 87501 ("Hotel").

11. On or about May 24, 2020, Plaintiff travelled from his home to Santa Fe.

12. Prior to traveling to Santa Fe, Plaintiff reviewed numerous hotels' booking websites to help him determine which identified and described accessibility features in the hotel and the guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the given hotel or guest room met his accessibility needs.

13. Plaintiff reviewed the booking website for Defendant's Hotel and discovered the 28 C.F.R. 36.302(e)(1)(ii) identifications, representations and disclosures documented in Table 1 below:

| BOOKING WEBSITES – ACCESSIBILITY INFORMATION www.laposadadesantafe.com |
| --- |
| NO MOBILITY ACCESSIBILITY INFORMATION |
| **Identification of Specific Barrier in Plain Language:** Booking website fails to provide information required by 28 CFR §36.302(e)(1)(ii). |
| **The manner in which the barriers denied Plaintiff full and equal use or access, and which deter Plaintiff from visiting the Hotel:** Barrier denied Plaintiff full and equal access by failing to identify and describe accessible features in the hotel and guest rooms in enough detail to reasonably permit Plaintiff to assess independently whether the hotel or guest room meets his accessibility needs. |
| **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about May 24, 2020. |
| Table 1 |

14. Plaintiff became aware that Defendant maintains a second booking website through Marriott which makes the following disclosures in Table 2:

| MARRIOTT BOOKING WEBSITE https://www.marriott.com/hotels/fact-sheet/travel/safle-la-posada-de-santa-fe-a-tribute-portfolio-resort-and-spa/#accessibility |
| --- |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Accessibility**                                                          Close ^

For more information about the physical features of our accessible rooms, common areas, or special services relating to a specific disability, please call +1 505-986-0000.

**Accessible Areas with Accessible Routes from Public Entrance**

Business Center
Concierge desk
Fitness Center
Meeting spaces and ballrooms
Pool accessible
Pool pathway
Public entrance alternative
Registration Desk Pathway
Registration desk
Restaurant(s)/Lounge(s)
Spa

**Accessible Hotel Features**

Accessible Self-parking
Braille and tactile signage provided for permanent rooms and spaces
Self-parking facility, van-accessible spaces
Self-parking, accessible spaces
Service animals are welcome
Valet parking for vehicles outfitted for drivers in wheelchairs
Elevators

**Guest Room Accessibility**

Accessible route from public entrance to accessible guest rooms
Alarm clock telephone ringers
Bathroom grab bars
Bathtub grab bars
Bathtub seat
Deadbolt locks, lowered
Door night guards lowered
Doors with lever handles
Electrical outlets, lowered
Flashing door knockers
Hearing accessible rooms and/or kits
No transfer shower s available
Roll-in shower
Shower wand, adjustable
TTY/TTD available
Toilet seat at wheelchair height
Vanities accessible
Viewports lowered

**DETAIL OF ABOVE**

4

## Accessible Areas with Accessible Routes from Public Entrance

Business Center

Concierge desk

Fitness Center

Meeting spaces and ballrooms

Pool accessible

Pool pathway

Public entrance alternative

Registration Desk Pathway

Registration desk

Restaurant(s)/Lounge(s)

Spa

| Accessible Hotel Features |
|---|
| Accessible Self-parking |
| Braille and tactile signage provided for permanent rooms and spaces |
| Self-parking facility, van-accessible spaces |
| Self-parking, accessible spaces |
| Service animals are welcome |
| Valet parking for vehicles outfitted for drivers in wheelchairs |
| Elevators |

**Table 2**

15. Plaintiff personally visited Defendant's Hotel on or about May 24, 2020.

16. Upon review of the Hotel's accessibility, Plaintiff noted that the Hotel was not compliant with the ADA and implementing regulations, 28 C.F.R. 36 and 2010 Standards for Accessibility Design, and that the statements regarding accessibility on the Marriott website were false as documented in Table 3 below.

17. Plaintiff subsequently documented the following architectural barriers to accessibility in Table 3 below:

**PERSONAL ENCOUNTERS WITH BARRIERS**

Identification.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



No handrails on ramp.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



No marked passenger loading zone.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Inaccessible lobby entry with no signage to accessible route.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Inaccessible check in conter.



No vertical signage for accessible parking.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28


No handrails on ramp

Inaccessible route with no signage to accessible route.



Inaccessible route with no signage to accessible route.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Improperly configured handrails.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Accessible parking level too steep.

| Inaccessible with no signage – handrails on one side only – improperly configured handrails |
|---|
| **Identification of Specific Barrier in Plain Language:** As indicate below each photo. |
| **The dates on each particular occasion on which Plaintiff encountered such barrier and which deter Plaintiff from visiting Hotel:** On or about May 24, 2020. |
| Table 3 |

18. Above documented inaccessible elements and routes directly interfere with Plaintiff's performance of major life activities including walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running,

reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities in a manner that deprive Plaintiff of full and equal enjoyment of the Hotel.

## COUNT ONE
### Violation of Plaintiff's Civil Rights under the ADA

19. Plaintiff realleges all allegations heretofore set forth.

20. By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted as alleged above.

21. Plaintiff visited Defendant's booking website and Defendant's Hotel and personally encountered ADA violations documented above.

22. The ADA violations described above relate to Plaintiff's disability and interfere with Plaintiff's full and complete enjoyment of the Hotel.

23. Plaintiff is deterred from conducting further business with the Hotel until the Hotel has become fully compliant with the ADA.

24. The removal of accessibility barriers listed above is readily achievable.

25. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

26. The issuance of injunctive relief will resolve, in part, Plaintiff's ADA claim.

WHEREFORE, Plaintiff prays for all relief as follows:

    A.  Relief described in 42 U.S.C. §2000a – 3; and

    B.  Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C.  Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

D. Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

E. Equitable nominal damages; and

F. For costs, expenses and attorney's fees; and

G. All remedies provided for in 28 C.F.R. 36.501(a) and (b).

<u>COUNT II</u>
**(Violation of the New Mexico's Unfair Practices Act §§57-12-1 *et seq*)**

27. Plaintiff realleges all allegations heretofore set forth.

28. New Mexico's Unfair Practices Act ("UPA") prohibits the use of unfair or deceptive trade practices as defined in 57-12-2.

***Consumer Fraud - Brand Deceit***

29. Hotels, motels and other places of lodging have developed a system of deceptive self-identification through the purchase and use of nationally recognizable brand names such as "Holiday Inn", "Hilton", "Hyatt", "Marriott" in order to hide the true ownership and operational management of the hotel or motel.

30. One way this deceptive self-identification is communicated to the guests and potential guests is through actual identification on the property itself.  For example, Defendant Ashford Posada, L.P. identifies itself as a member of the Tribute Portfolio, a Marriott subsidiary:





31. The misidentification is necessary because general public, including Plaintiff, identify Marriott's Tribute Portfolio with a higher degree of lodging standard and general integrity than Ashford Posada, L.P. which is an unknown entity in the lodging business.

32. Another way Defendant misidentifies itself is thorough its booking website:



33. The intent and purpose of this deceptive self-identification is to mislead the lodging public into believing that they are booking a hotel room at a national brand name property when they are in fact booking a room with an unknown owner and an unknown operator. Plaintiff justifiably relied on La Posada's false self-identification to his damage.

34. Plaintiff suffered an injury resulting from the false misrepresentation(s) and was damaged thereby in an amount of no less than $35,000.00.

35. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

1  36. Defendant is liable to Plaintiff for punitive damages in an amount to be proven
2      at trial sufficient, however, to deter this Defendant and others similarly situated
3      from pursuing similar acts but in no event less than $135,000.00.
4      ***Booking Website Misrepresentations and Omissions***
5  37. The information in Hotel's booking website, laposadadesantafe.com, Table 1,
6      completely omits to disclose the information required to be disclosed pursuant to 28
7      C.F.R. 36.302(e)(1)(ii) to detriment of Plaintiff and lodging public.
8  38. The disclosures on Marriott's website, Table 2, are designed to lead a reader to believe
9      that the Hotel is ADA compliant when in fact is replete with architectural barriers
10     detailed in Table 3.
11 39. Plintiff has been damaged by Defendant's violation of the UPA in an amount to be
12     proven at trial, but in no event less than $25,000.00.
13 40. Defendant's lack of recognition of the rights of the disabled displayed in its marketing
14     website, and its treatment of disabled individuals as fully bodies, is socially
       reprehensible and displays Defendant's ableism and segregationism.
15 41. Defendant's conduct alleged in this Count and elsewhere in thie Complaint is
16     reprehensible and requires a strong deterrent action in the form of punitive damages[1].
17     WHEREFORE, Plaintiff prays for relief pursuant to 57-12-10 as follows:
18
19
20 [1] *Bogle v. Summit Inv. Co.*, 137 N.M. 80, 107 P.3d 520 (N.M. App. 2005). These
   objectives are of critical importance in the ADA context where Plaintiffs have no
21 monetary recourse other than the imposition of equitable nominal damages under the
   ADA and where compensatory damages may be *de minimis* or difficult to quantify
22 under negligence law. *Akins v. United Steel Workers, AFL-CIO, CLC Local 187*, 148
   *NM.* 442, 237 P.3d 744 (NM 2010). *See also Sanchez v. Clayton*, 117 N.M. 761, 767,
23 877 P.2d 567, 573 (1994) ("Indeed, if the defendant's conduct otherwise warrants punitive
   liability, the need for punishment or deterrence may be increased by reason of the very
24 fact that the defendant will have no liability for compensatory damages." (citing 1 Dan B.
   Dobbs, Law of Remedies § 3.11(10), at 515-16 (2d ed. 1993))). The present case is
25 illustrative where a compensatory award against the Hotel may be de minimis or difficult
26 to quantify. *Compare* with *Akins*, "The present case is illustrative; a compensatory
27 award against the Union of a mere $1,661 would hardly deter similar outrageous
28 conduct against other Union members in the future."

23

A. Injunctive relief requiring Defendant to remediate its unfair and discriminatory practices; and

B. For damages in an amount to be proven at trial, but in no event less than $35,000.00; and

C. For punitive damages in an amount commensurate with Defendant's reprehensible conduct and the need for deterrence of similar conduct by others, but in no event less than $50,000.00; and

D. For costs and attorney's fees; and

E. For leave to amend this Complaint to add class action allegations; and

F. For such other and further relief as the Court may deem just and proper.

## COUNT III
### Negligence

42. Plaintiff realleges all allegations heretofore set forth.

43. Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

44. Defendant breached this duty.

45. Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[2].

46. Defendant knowingly and intentionally participated in this historical discrimination against Plaintiff, causing Plaintiff damage.

47. Discrimination against individuals with disabilities persists in the use and enjoyment of critical public accommodations[3].

---

[2] 42 U.S.C. §12101(a)(2)
[3] 42 U.S.C. §12101(a)(3)

48. Defendant's knowing and intentional persistence in discrimination against Plaintiff and similarly situated persons caused Plaintiff damage by preventing him from lodging at Defendant's Hotel.

49. Individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities[4].

50. Defendant's knowing and intentional discrimination against Plaintiff reinforces above forms of discrimination, causing Plaintiff damage.

51. Census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[5].

52. Defendant's knowing and intentional discrimination has relegated Plaintiff to an inferior status in society, causing Plaintiff damage.

53. The Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[6].

54. Defendant's knowing, and intentional discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

55. Continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity[7].

---

[4] 42 U.S.C. §12101(a)(5)
[5] 42 U.S.C. §12101(a)(6)
[6] 42 U.S.C. §12101(a)(7)
[7] 42 U.S.C. §12101(a)(8)

56. Defendant's knowing and intentional unfair and unnecessary discrimination against Plaintiff demonstrates Defendant's knowing and intentional damage to Plaintiff.

57. Plaintiff has been damaged by Defendant's negligence in an amount to be proven at trial, but in no event less than $35,000.00.

58. Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

59. According to New Mexico common law, punitive damages serve two important policy objectives under our state common law: to punish reprehensible conduct and to deter similar conduct in the future.

60. By violating Plaintiff's civil rights, Defendant engaged in intentional, aggravated and outrageous conduct.

61. The ADA has been the law of the land since 1991, but Defendant engaged in a conscious action of a reprehensible character, that is, Defendant denied Plaintiff his civil rights, and cause him damage by virtue of segregation, discrimination, relegation to second class citizen status the pain, suffering and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

62. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

63. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts, and in no event less than $50,000.00.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A. For finding of negligence and/or negligence per se; and

    B. For damages in an amount to be proven at trial; and

    C. For punitive damages to be proven at trial; and

    D. For such other and further relief as the Court may deem just and proper.

1

# REQUEST FOR TRIAL BY JURY

2

Plaintiff respectfully requests a trial by jury in issues triable by a jury.

3

DATED this 10th day of August, 2020

4

5

**PETER STROJNIK**

6

_____

7

Plaintiff
7847 N. Central Avenue

8

Phoenix, AZ 85020
602-524-6602

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28